# BRACEWELL

April 12, 2026

**VIA ECF**

Hon. Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:     *United States v. Patrick James and Edward James*, 26-CR-00029-AT

Dear Judge Torres:

On behalf of Edward James ("Mr. James") we write to respectfully request an adjournment of the trial date currently set for July 13, 2026 until a date in the Fall of 2026 that is convenient for the Court. We also request that the time by which we must file pretrial motions be extended from May 1, 2026 to a date sufficiently in advance of any new trial date, to allow counsel to adequately prepare such motions and to prepare the defense at trial.

An extension of the motion deadline and an adjournment of the trial are necessary because the Government has failed to timely produce discovery materials that are essential to the preparation of Mr. James' defenses. Based on our last communication with the Government, the Government has reserved its position with respect to our motion for an adjournment but has indicated that if the Court grants such a motion, the Government is available for trial in the Fall of 2026. On April 10, 2026, counsel for codefendant Patrick James also filed a motion for an adjournment on similar grounds. For the reasons set forth below, an adjournment of the motion schedule and trial are warranted in the interests of justice.

## I.     Background

This case is complicated. It arises from allegations that Mr. James and others used their positions at First Brands Group ("First Brands" or "FBG"), a large automotive parts supply company, to mislead highly sophisticated counterparties. The Government arrested Mr. James at his home in Ohio on January 29, 2026, arraigned him in Cleveland, and removed him to the Southern District of New York, where he

**Seth D. DuCharme**     T: +1.212.508.6165     F: 800.404.3970
**Partner**     31 W. 52nd Street, Suite 1900, New York, New York 10019-0019
seth.ducharme@bracewell.com     bracewell.com

AUSTIN   DALLAS   DUBAI   HOUSTON   LONDON   NEW YORK   PARIS   SAN ANTONIO   SEATTLE   WASHINGTON, DC

# BRACEWELL

Hon. Analisa Torres
April 12, 2026
Page 2

appeared for an initial conference before this Court approximately two months ago.  The speaking Indictment in this case sets forth a complicated narrative and nine separate counts against Mr. James and his codefendant, Patrick James.  The Government has characterized this case as relating to "a yearslong fraud at First Brands" that "bankrupt[ed] the global automotive company in September 2025" and resulted in billions of dollars in losses.[1]  The prosecution team included the Federal Bureau of Investigation, the Internal Revenue Service, Homeland Security Investigations, and a task force in Ohio comprised of federal prosecutors from the U.S. Attorney's Office for the Northern District of Ohio.  The Securities and Exchange Commission is also conducting a parallel investigation into the same conduct alleged in the Indictment.  This case is complex, the prosecution team is very large, the Government's discovery obligations are broad, and the discovery materials produced to date are voluminous.[2]

At the last Court appearance on February 4, 2026, the Government stated that it would make rolling document productions over the following weeks and agreed to a date of April 27, 2026 for the next conference, at which point it would have "a good portion of the discovery produced[.]"  Feb. 4, 2026 Hr'g Tr. at 2:10-19.  Based on that representation, the Court set a May 1, 2026 deadline for the defendants' pretrial motions, with the expectation that the Government would have "finished delivering discovery by that date[.]"  *Id.* at 3:8-11; 4:13-20.  The Government has since informed us that it has not finished producing discovery to Mr. James and has not provided us with a date by which it expects to do so.  The Government also recently invited us to provide a detailed list of materials that would be helpful to the preparation of the defense.  We provided detailed requests for specific materials that we have not received and a request for a Bill of Particulars to help Mr. James better understand the allegations against him.  *See* Demand for *Brady* Material and Demand for Bill of Particulars, dated April 8, 2026; attached hereto as Exhibits A and B, respectively.  To date, we have received no response from the Government.

## II.      Categories of Information the Government Has Failed to Produce

To date, the Government has not produced materials that it is obligated to timely provide to the defense pursuant to Rule 16, *Brady*, *Giglio* and the Jencks Act, 18 U.S.C § 3500.

### A.   Rule 16

Much of the information the Government has failed to produce in advance of the April 27 status conference falls within Rule 16 of the Federal Rules of Criminal Procedure.

Rule 16 requires that the Government "disclose to the defendant . . . any relevant written or recorded statement by the defendant if [the] statement is within the government's possession, custody, or control; and the attorney for the government knows—*or through due diligence could know*—that the statement exists."  Fed. R. Crim. P. 16(a)(1)(B)(i) (emphasis added).  Here, the Government has not produced all of Mr. James' statements.  For example, because Mr. James served as an employee at First Brands during a portion of the relevant time frame, and his offense conduct is alleged to have arisen from

---

[1] *See* SDNY USAO Press Release, Jan. 29, 2026, *available at* https://www.justice.gov/usao-sdny/pr/first-brands-executives-charged-multibillion-dollar-fraud.

[2] To date, the Government has produced more than 1.7 million documents, comprising more than 7 million pages.

# BRACEWELL

Hon. Analisa Torres
April 12, 2026
Page 3

communications he had as a First Brands employee, there are undoubtedly "relevant written and recorded statements" that are material to the defense in this case in the form of emails and documents between Mr. James and other First Brands employees (such as the Government's cooperating witnesses, some of whom it has publicly identified), and also with the counterparties he is alleged to have defrauded. We do not have access to these materials, nor can we obtain them without assistance from the Government, because Mr. James has not had access to them since leaving First Brands months before this case was brought.

If the Government does not have all of Mr. James' statements, as it may claim, that is troubling, because it suggests that either the Government (a) never subpoenaed all of the relevant documents from First Brands or (b) allowed First Brands to curate information and selectively provide to the Government only the information that is potentially helpful to Government, but *not* helpful to Mr. James. We have asked the Government these questions and are awaiting a response. *See* Exhibits A and B.

Relatedly, the Indictment charges Mr. James with conduct in which he allegedly acted as an authorized representative for First Brands. For example, the Indictment charges Mr. James with sending allegedly misleading First Brands documents to corporate counterparties. Documents in the possession of the Government, which were obtained, or through due diligence *could be* obtained, and which directly pertain to these allegations are relevant and helpful to the preparation of the defense. Some of these corporate documents were not created by Mr. James, but rather by other individuals at First Brands who had the authority to bind the company, such as Stephen Graham, whom the Government has identified as a cooperating witness who is expected to testify against Mr. James at the trial that [the Court] has set for July 13." *See*, Mar. 2, 2026 Hr'g Tr. 28:18–20 (*United States v. Stephen Graham*, No. 26-CR-00025-AT).

Rule 16 also addresses, in part, the proposition that Mr. James is entitled to statements made by other First Brands employees who prepared corporate documents and made written statements that are relevant to the Government's prosecution. *See* Fed. R. Crim. Pro. 16(a)(1)(C) (requiring the Government to produce corporate documents pertaining to the statements of defendants who were "legally able to bind the defendant regarding the subject of the statement because of that person's position, . . . was personally involved in the alleged conduct constituting the offense and was legally able to bind the defendant . . . because of that person's position as the defendant's director, officer, employee, or agent").

While Rule 16(a)(1)(C) applies to circumstances where an "organization" is a defendant, and Mr. James of course is not himself an "organization," this case arises from actions taken by his employer, First Brands, which was owned by his codefendant. Thus, for all practical purposes, the Government has alleged that the organization was the vehicle by which the defendants perpetrated the alleged scheme. Accordingly, communications and documents alleged to have "bound" the organization and in which the authors were alleged to have been "personally involved" in participating in the "alleged conduct constituting the offense" are material to the preparation of Mr. James' defense. *Id*. If the Government is

AUSTIN  DALLAS  DUBAI  HOUSTON  LONDON  NEW YORK  PARIS  SAN ANTONIO  SEATTLE  WASHINGTON, DC

# BRACEWELL

Hon. Analisa Torres
April 12, 2026
Page 4

in possession of such documents, it should produce them.  If it is not in possession of such documents, it should, through due diligence, obtain them.[3]

In addition, the central and most basic obligation under Rule 16 is that it requires the Government to produce all "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and [] the item is material to preparing the defense."  Fed. R. Crim. Pro. 16(a)(1)(E).  The Government acknowledges that it has not yet produced all of even these materials.  Mr. James promptly made specific requests for such materials, and he has yet to receive all of them.  *See, e.g.,* Exhibits A and B.  For example, we have requested:

A.  All communications and correspondence, including notes of oral communications, between FBG and/or its employees, attorneys, or agents and any component of the United States Government, including:

   i.    communications between FBG and its agents and the Government concerning the coordination of civil and criminal discovery or the sharing of information between the bankruptcy proceedings;

   ii.   communications between the Government and FBG or its agents regarding the allegations made in the adversary proceeding captioned *First Brands Group, LLC v. Onset Financial, Inc., et al.*, Adv. Proc. No. 26-03005 (Bankr. S.D. Tex.).

B.  Exculpatory or otherwise discoverable documents and data in the possession, custody, or control of FBG, including but not limited to:

   i.    all documents produced by FBG and its agents to any party in the adversary proceeding captioned *First Brands Group, LLC v. Onset Financial, Inc., et al.* Adv. Proc. No. 26-03005 (Bankr. S.D. Tex.), as well as all documents produced by any party to FBG in the same matter;

   ii.   all emails and communications sent and received by Edward James, including where Mr. James was copied, in the possession of FBG;

   iii.  all calendar entries, including conference and video call invites, on which Edward James was included, in the possession of FBG;

   iv.   all chat and instant message communications on which Edward James was included in the possession of FBG;

---

[3] Notwithstanding the limitation of Rule 16(a)(1)(C) to an "organizational defendant," as discussed further below, the Government has an independent obligation to produce written and recorded statements of its  witnesses, including but not limited to Stephen Graham and Andy Brumbergs, pursuant to the Jencks Act, 18 U.S.C. § 3500.

# BRACEWELL

Hon. Analisa Torres
April 12, 2026
Page 5

        v.        all communications with media and press outlets related to (i) the bankruptcy; (ii) the Government's investigation; and/or (iii) Edward James.

The Government has not produced these materials.

Finally, we expect that the Government will call expert witnesses at trial, which are subject to pretrial challenge. *See generally Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); Fed. R. Evid. 702. Rule 16(a)(1)(G) requires that the Government must disclose to the defendant, in writing, the information it intends to use at trial during its case-in-chief, or during its rebuttal. Fed. R. Crim. Pro. 16(a)(1)(G). The Court, then, must set a time for the Government to make its disclosures. *Id.* "*The time must be sufficiently before trial* to provide a fair opportunity for the defendant to meet the government's evidence,*" id.* (emphasis added) and the disclosure for each expert witness must contain:

- a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C);

- the bases and reasons for them;

- the witness's qualifications, including a list of all publications authored in the previous 10 years; and

- a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

*Id.* So, if the Government intends to call expert witnesses in this case, it must disclose them in time for Mr. James to file pretrial motions.

In addition, the Government has not produced "responsiveness reports" for all devices, inboxes, and accounts that it collected and searched for information relevant to the Government's case and therefore helpful to the preparation of the defense. The Government has produced responsiveness reports for *some*, but not all, of its collections, but among the reports not yet produced are those for at least four First Brands employee inboxes and the entirety of co-defendant Patrick James' personal email account, a repository that, given the allegations in the Indictment, may be among the most significant sources of relevant information in this case. A few days ago, the Government acknowledged that it expects to produce additional responsiveness reports before the April 27 conference, but that the responsiveness reports for Mr. James' alleged coconspirator's materials *will not be produced until well after the current May 1, 2026 motions deadline*.

In sum, pursuant to the express requirements of Rule 16, the Government must provide to Mr. James all relevant statements, documents, reports, company communications, and expert notices in this

# BRACEWELL

Hon. Analisa Torres
April 12, 2026
Page 6

case, and it must provide them in time for them to be useful.  These materials are essential not only to preparing for trial, but in filing the pretrial motions that are currently due on May 1.

### III.    The Government Has Not Responded to Demands for *Brady* and *Giglio* Materials and Has Not Provided a Bill of Particulars

On April 8, 2026, Mr. James served a demand for the Government's prompt disclosure of certain categories of information discoverable pursuant to Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).  Mr. James served these demands *after* the Government invited him to do so, suggesting that the Government is not confident that its own review of the materials within its possession have satisfied its discovery obligations.  *See* Exhibit A.

### A.    Satisfying *Brady* Obligations Is Essential to a Fair Trial

The Government's obligation to disclose exculpatory information is its most serious responsibility.  In *Brady*, the Supreme Court held that the Government's failure to disclose evidence favorable to an accused person, like Mr. James, violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.  Since the Supreme Court's holding in *Brady* was handed down decades ago, federal courts have repeatedly admonished prosecutors, including in this district, of the significant consequences for failing to uphold their essential obligation. *See, e.g., United States v. Nejad*, 487 F. Supp. 3d 206, 225–26, 213 (S.D.N.Y. 2020) ("With each misstep, the public faith in the criminal-justice system further erodes. With each document wrongfully withheld, an innocent person faces the chance of wrongful conviction . . . [a]nd the likelihood grows that a reviewing court will be forced to reverse a conviction or even dismiss an indictment.").  In *United States v. Binday*, Judge McMahon ruled on a *Brady* motion three months before trial in a complex, multi-defendant fraud case, holding that "timeliness with respect to *Brady* disclosure means *immediate* disclosure upon discovery."  *United States v. Binday*, No. 12-Cr-152(CM), 2012 WL 6135013, at *498 (S.D.N.Y. Dec. 10, 2012) (internal quotation omitted).  Accordingly, in this district, as in others, the Court has issued a standing order to expressly inform prosectors of their *Brady* obligations at the outset of every prosecution. The Government *must* comply with its *Brady* obligations in time for those materials to be useful to Mr. James.

### B.    Impeachment Material that Undermines the Government's Allegations against Mr. James

To advance its case, the Government relies on the credibility of at least two cooperating witnesses: Andrew Brumbergs and Stephen Graham.  The Government is obligated to provide to Mr. James all information that calls into question the veracity of the Government's witnesses under *Giglio v. United States*, 405 U.S. 150 (1972).  There is a fine line between *Brady* and *Giglio*, as both are exculpatory to Mr. James.

### C.    Statements of the Government's Witnesses

Because the Government has announced that it is relying on Brumbergs and Graham, it will inevitably have to produce their prior statements, along with the other prior statements of all witnesses it intends to call.  *See* 18 U.S.C. § 3500.  Even if the materials do not contain impeachment material, which is highly unlikely, the Government must produce these prior statements.  For the economy of the judicial

# BRACEWELL

Hon. Analisa Torres
April 12, 2026
Page 7

process, the Government should produce these materials well before trial. But in any event, the law is clear that the Government's *Brady* and *Giglio* obligations are of even greater importance than its 3500 obligations – the Government must disclose exculpatory information sooner than it is required to produce prior statements of its trial witnesses. *United States v. Rittweger*, 524 F.3d 171, 181 n.4 (2d Cir. 2008) ("*Brady* [is] a constitutional requirement that trumps the statutory power of 18 U.S.C. § 3500.").

**IV.    Privilege Review is Ongoing and the Government Has Not Produced Its Own Privilege Log**

Finally, but of equal importance to the need to adjourn the trial and motion schedule, on March 25, the Government's filter team produced approximately 100,000 documents that require Mr. James' review and application of personal privilege claims. The government gave counsel for Mr. James less than two weeks to review those materials for privilege, and Mr. James submitted a privilege log related to those materials on April 10, as requested by the Government. The Government, on the other hand, has not produced any privilege log to Mr. James. Without one, Mr. James cannot assess whether the Government has withheld materials that may be relevant to his defense, nor can he evaluate whether privilege challenges are warranted. The absence of any Government privilege log is itself an obstacle to the timely preparation of pretrial motions.

**V.    Conclusion**

The materials Mr. James expressly requested of the Government are critical to developing Mr. James' defenses against the Government's complicated and, at times, vague allegations. As of today, the Government has not yet responded to Mr. James' requests and has thus far declined to even identify a date by which it *intends* to complete its review for *Brady* materials. Accordingly, an adjournment of the trial and an extension of the date by which Mr. James must file pretrial motions is warranted under the circumstances. Mr. James is adamant that he wants a speedy trial. But he is also entitled to a fair one.

Respectfully submitted,

/s/ Seth DuCharme

Seth D. DuCharme

cc: Counsel of record (via ECF)

AUSTIN   DALLAS   DUBAI   HOUSTON   LONDON   NEW YORK   PARIS   SAN ANTONIO   SEATTLE   WASHINGTON, DC