# EXHIBIT A

# BRACEWELL

April 8, 2026


**Via E-Mail**


Mr. Nicholas Chiuchiolo
Ms. Marguerite Colson
Mr. Peter Davis
Ms. Sarah Mortazavi
Assistant United States Attorneys
Southern District of New York
26 Federal Plaza
New York, NY 10278

Re:     Demand for *Brady* Material
        *United States v. Patrick James and Edward James*, 26-CR-00029-AT


Dear Mr. Chiuchiolo, Ms. Colson, Mr. Davis, and Ms. Mortazavi,

We represent Edward James in the above-referenced matter and respectfully request that the Government[1] disclose the categories of information detailed below, which are discoverable pursuant to Rule 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and *Giglio v. United States*, 405 U.S. 150 (1972). In order to prepare for trial, we request that the Government promptly produce all responsive materials.

---

[1] For the purposes of this letter, "Government" refers to the United States Attorney's Office for the Southern District of New York, the United States Attorney's Office for the Northern District of Ohio, the Office of the Deputy Attorney General, the Criminal Division of the United States Department of Justice, the Securities and Exchange Commission, the Federal Bureau of Investigation, the United States Secret Service, Homeland Security Investigations, the Internal Revenue Service, and any other federal, state, or local agency that has participated in, contributed to, or otherwise assisted with the investigation of Edward James, Patrick James, or First Brands Group.

**Seth D. DuCharme**
**Partner**

T: +1.212.508.6165        F: 800.404.3970
31 W. 52nd Street, Suite 1900, New York, New York 10019-0019
seth.ducharme@bracewell.com        bracewell.com

AUSTIN  DALLAS  DUBAI  HOUSTON  LONDON  NEW YORK  PARIS  SAN ANTONIO  SEATTLE  WASHINGTON, DC

# BRACEWELL

April 8, 2026
Page 2

I.    **Incorporation by Reference**

To the extent that counsel for Patrick James also had similar requests to the Government, we incorporate by reference all such requests made and request production of any materials produced to Patrick James. Below we include requests for additional material specific to Edward James.[2]

II.    **Information and Material Related to First Brands Group's Internal Investigation and Cooperation**

We understand that through its agents, First Brands Group, including its affiliates and subsidiaries ("FBG"), undertook a Special Committee investigation and actively assisted and participated in the Government's investigation of Edward James and Patrick James. We further understand that FBG's assistance included voluntarily producing large quantities of documents, making detailed factual proffers to the Government, and facilitating the Government's access to FBG personnel. Accordingly, under *Brady v. Maryland* and its progeny, as well as Rule 16 of the Federal Rules of Criminal Procedure, we request that you provide us with documents and information, including electronic data, provided by FBG. In addition, we request all communications evidencing coordination between FBG and the Government and evidence shared or withheld through that cooperation. This request specifically includes but is not limited to:

a.    All communications and correspondence, including notes of oral communications, between FBG and/or its employees, attorneys, or agents and any component of the United States Government, including:

   i.    communications between FBG and its agents and the Government concerning the coordination of civil and criminal discovery or the sharing of information between the bankruptcy proceedings, including *First Brands Group, LLC v. Onset Financial, INC., et al.* Adv. Proc. No. 26-03005 (Bankr. S.D. Tex.), including but not limited to communications regarding a potential stay of civil discovery, whether sought by FBG or the Government;

   ii.    communications between the Government and FBG or its agents regarding the allegations made in the adversary proceeding captioned *First Brands Group, LLC v. Onset Financial, INC., et al.,* Adv. Proc. No. 26-03005 (Bankr. S.D. Tex.).

b.    Exculpatory or otherwise discoverable documents and data in the possession, custody, or control of FBG, including but not limited to:

   i.    all documents produced by FBG and its agents to any party in the adversary proceeding captioned *First Brands Group, LLC v. Onset Financial, INC., et al.* Adv.

---

[2] For the purposes of this letter, "Mr. James" refers to Edward James.

# BRACEWELL

April 8, 2026
Page 3

Proc. No. 26-03005 (Bankr. S.D. Tex.), as well as all documents produced by any party to FBG in the same matter;

ii. all emails and communications sent and received by Edward James, including where Mr. James was copied, in the possession of FBG;

iii. all calendar entries, including conference and video call invites, on which Edward James was included, in the possession of FBG;

iv. all chat and instant message communications on which Edward James was included in the possession of FBG;

v. all communications with media and press outlets related to (i) the bankruptcy; (ii) the Government's investigation; and/or (iii) Edward James.

III.   **Exculpatory and Impeachment Material Regardless of Source**

Additionally, please produce all material (including but not limited to agent notes, memoranda of interviews, grand jury testimony) in which any individual or third-party provided any information:

a.  Universal Topics

i. suggesting or supporting an inference that Edward James did not knowingly or intentionally violate any law with respect to the sale of FBG's accounts receivables to any third-party, including, but not limited to, Katsumi, Leucadia, Evolution, Raistone, Onset, Aequum, Factofrance, and others;

ii. suggesting or supporting an inference that Edward James did not knowingly or intentionally violate any law with respect to the sale of FBG's accounts payable to any third-party, including but not limited to Raistone, Zenith, Wells Fargo, Bank of America, Truist, UBS, US Bank, Prime Revenue, and others;

iii. suggesting or supporting an inference that Edward James encouraged FBG employees to obey the law and/or to engage in ethical behavior;

iv. suggesting or supporting an inference that Edward James' role and authority at FBG was limited, including with respect to decision-making, or that he was not included in meetings and discussions regarding certain topics;

v. suggesting or supporting an inference that Edward James was absent, on leave, or took time away from his role at FBG, including, but not limited to, for personal reasons following the death of his son;

# BRACEWELL

April 8, 2026
Page 4

vi. suggesting or supporting an inference that Edward James supported FBG's internal investigations of allegations regarding improper sales practices and/or improper revenue recognition;

vii. suggesting or supporting an inference that Edward James believed that accounts receivable and/or accounts payable sold to third-party factors or supply chain lenders reflected real invoices owed to or by FBG;

viii. suggesting or supporting an inference that Edward James was reliant on others at FBG, including but not limited to legal counsel, for his understanding of various issues related to inventory, lending, and fund transfers;

ix. suggesting or supporting an inference that Edward James believed that financing arrangements involving special purpose vehicles ("SPVs") affiliated with FBG were disclosed to FBG's other lenders and did not violate the terms of existing lending agreements;

x. suggesting or supporting an inference that Edward James believed that representations concerning FBG's assets, including but not limited to inventory, made to lenders were accurate;

xi. suggesting or supporting an inference that Edward James was unaware of the alleged fabrication and/or manipulation of accounts receivable sold to third-party factors;

xii. suggesting or supporting an inference that Edward James was unaware of the alleged fabrication and/or manipulation of accounts payable sold to supply chain lenders;

xiii. suggesting or supporting an inference that Edward James did not have expertise in accounting, revenue recognition, accounts receivable factoring, supply chain financing, and/or the structuring of SPV inventory financing arrangements, and/or relied on the advice of attorneys, accountants, and/or financial advisors in connection with the transactions at issue;

xiv. suggesting or supporting an inference that third-party factors, SPV lenders, and accounts payable lenders conducted their own independent due diligence, were aware of the nature and risks of their financing arrangements with FBG, did not rely solely on representations made by FBG or Edward James, did not view the representations made by FBG or Edward James as material, earned returns substantially above market rates, and/or would have entered into the same

# BRACEWELL

April 8, 2026
Page 5

      transactions on the same or substantially similar terms regardless of the accuracy of such representations;

xv.   suggesting or supporting an inference that Edward James disclosed Optimus Private Capital's investment with Onset, that others at FBG were aware of and/or approved of the investment, or that the investment was intended to benefit FBG;

xvi.   suggesting or supporting an inference that Edward James was unaware of, or lacked knowledge of, any of the topics described in (i) through (xv).

b.   <u>Andy Brumbergs</u>

i.   suggesting or supporting an inference that Edward James lacked knowledge of the representations Andy Brumbergs made to third-party factors regarding the existence or value of certain accounts receivable;

ii.   suggesting or supporting an inference that Andy Brumbergs independently managed FBG's operational and financial affairs, including the factoring arrangements, SPV financing structures, accounts payable programs, and transfers from FBG to Edward James or affiliated entities, and made decisions and representations to third-party factors, SPV lenders, supply chain lenders, or other counterparties regarding FBG's accounts receivable, accounts payable, inventory, or financial condition without direction from, consultation with, or the knowledge of Edward James.

c.   <u>Stephen Graham</u>

i.   suggesting or supporting an inference that Edward James lacked knowledge of the representations Stephen Graham made to third-party factors regarding the existence or value of certain accounts receivable;

ii.   suggesting or supporting an inference that Stephen Graham independently managed FBG's operational and financial affairs, including the factoring arrangements, SPV financing structures, accounts payable programs, and transfers from FBG to Edward James or affiliated entities, and made decisions and representations to third-party factors, SPV lenders, supply chain lenders, or other counterparties regarding FBG's accounts receivable, accounts payable, inventory, or financial condition without direction from, consultation with, or the knowledge of Edward James.

# BRACEWELL

April 8, 2026
Page 6

d. Michael Baker

    i. suggesting or supporting an inference that Edward James believed that Michael Baker reviewed the SPV agreements, factoring arrangements, accounts payable arrangements, or transfers from FBG to Mr. James to ensure compliance with applicable laws and existing contractual obligations;

    ii. suggesting or supporting an inference that Michael Baker was acting as an attorney for Edward James or FBG, in connection with the transactions at issue, and/or that Mr. James communicated with Mr. Baker in confidence for the purpose of seeking and receiving legal advice;

    iii. suggesting or supporting an inference that the Government obtained or reviewed communications between Edward James and Michael Baker and/or that FBG or its agents waived privilege over such communications in connection with their cooperation with the Government's investigation;

    iv. suggesting or supporting an inference that Michael Baker independently managed FBG's operational and financial affairs, including the factoring arrangements, SPV financing structures, accounts payable programs, and transfers from FBG to Patrick James or affiliated entities, and made decisions and representations to third-party factors, SPV lenders, supply chain lenders, or other counterparties regarding FBG's accounts receivable, accounts payable, inventory, or financial condition without direction from, consultation with, or the knowledge of Edward James.

To the extent *Brady* or *Giglio* material has already been produced in this matter, please specifically identify (via Bates range) such material. Our *Brady* requests herein are continuing in nature, and the requests provided thus far are not intended to be complete or exhaustive. We reserve the right to supplement and further these requests.

Finally, we request that the Government abide by Justice Manual 9-5.001(C), which provides that:

Department policy recognizes that a fair trial will often include examination of relevant exculpatory or impeachment information that is significantly probative of the issues before the court but that may not, on its own, result in an acquittal or, as is often colloquially expressed, make the difference between guilt and innocence. As a result, this policy requires disclosure by prosecutors of information beyond that which is "material" to guilt as articulated in *Kyles v. Whitley*, 514 U.S. 419 (1995), and *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999).

1. **Additional exculpatory information that must be disclosed.** A prosecutor must disclose information that is inconsistent with any element of any crime charged against the

# BRACEWELL

April 8, 2026
Page 7

defendant or that establishes a recognized affirmative defense, regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal of the defendant for a charged crime.

2. **Additional impeachment information that must be disclosed.** A prosecutor must disclose information that either casts a substantial doubt upon the accuracy of any evidence—including but not limited to witness testimony—the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of prosecution evidence. This information must be disclosed regardless of whether it is likely to make the difference between conviction and acquittal of the defendant for a charged crime.

3. **Information.** Unlike the requirements of *Brady* and its progeny, which focus on evidence, the disclosure requirement of this section applies to information regardless of whether the information subject to disclosure would itself constitute admissible evidence.

4. **Cumulative impact of items of information.** While items of information viewed in isolation may not reasonably be seen as meeting the standards outlined in paragraphs 1 and 2 above, several items together can have such an effect. If this is the case, all such items must be disclosed.

Thank you for your prompt attention to these requests.

Very truly yours,

Seth D. DuCharme

AUSTIN  DALLAS  DUBAI  HOUSTON  LONDON  NEW YORK  PARIS  SAN ANTONIO  SEATTLE  WASHINGTON, DC