**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PATRICK JAMES and EDWARD JAMES,<br><br>Defendants. | Case No.: 1:26-CR-29 (AT) |

# DEFENDANT EDWARD JAMES'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO SEVER

BRACEWELL LLP
31 West 52nd Street
Suite 1900
New York, NY 10019
(212) 508-6100

**PRELIMINARY STATEMENT**

Edward James respectfully submits this supplemental memorandum in further support of his Motion to Sever (Dkt. No. 111) (the "Motion") based on materials the government produced only *after* the deadline for Defendants' pretrial motions and that further substantiate his grounds for severance.[1] Those materials concern Lisa Ruth ("Ruth"), [redacted] The government possessed these materials prior to Defendants' pretrial motion deadline yet declined to produce them until ten days after that deadline had passed.

The Ruth materials confirm two distinct forms of prejudice identified in the Motion that would result from a joint trial. First, they add [redacted] Yet the government is likely to emphasize these materials at trial, creating a substantial risk that the jury will treat Patrick's alleged consciousness of guilt as evidence against Ed and will be unable to assess Ed's culpability independently.

Second, the Ruth materials confirm that Patrick's defense will operate as a second prosecution of Ed. [redacted]—closely track Patrick's previewed defense that Ed pursued "damaging side deals" for his own benefit and at Patrick's expense. A joint trial would therefore require Ed to defend

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Motion.

simultaneously against the government's case and Patrick's effort to exculpate himself by shifting blame to Ed. Because the newly disclosed evidence magnifies both the risk of prejudicial spillover and the danger of double prosecution, severance is necessary to preserve Ed's right to a fair trial.

## BACKGROUND

The Motion was filed on September 4, 2026, in compliance with the Court's pretrial motions deadline. Weeks earlier, on August 11, 2026, defense counsel wrote to the government seeking clarification regarding outstanding discovery. Ex. A.[2] The government responded on August 21, 2026 that it anticipated making additional Rule 16 productions, [redacted] Ex. B. According to the government, Ruth [redacted] *See* Ex. C [redacted]

On August 28, 2026, defense counsel requested [redacted] *See* Ex. D. Because the government's response would be "material to the defendant's pretrial motions," the defense requested a response by September 2, 2026. *Id.* The government responded on September 3, 2026, declining to produce the [redacted] at that time on the basis that the materials "[redacted] Ex. E. Defendants therefore filed their pretrial motions the following day without access to this information.

---

[2] Exhibits cited herein are attached to the Declaration of Seth D. DuCharme filed herewith. Any document submitted with this motion bearing the Bates prefix "SDNY_JAMES" was produced to Defendants by the government.

On September 14, 2026—ten days after the pretrial motion deadline and eleven days after refusing production [redacted]—the government produced the requested materials concerning Ruth. *See* Ex. F. The production included a [redacted]

[redacted]

[redacted]

---

[3] Brumbergs has pleaded guilty to several charges arising from his participation in the alleged schemes: one count of conspiracy to commit wire fraud and bank fraud, four counts of wire fraud, two counts of bank fraud, and one count of conspiracy to commit money laundering. *See United States v. Peter Andrew Brumbergs*, No. 1:26-CR-25 (AT), Dkt. No. 13 (S.D.N.Y. Jan. 26, 2026).

[redacted]

[redacted]

The timing of the government's production of the Ruth materials is notable. The Ruth materials [redacted] yet the government did not produce this discovery material to the defense until September 14, 2026. [redacted] the government refused to produce [redacted] prior to the pretrial motion deadline on the basis that [redacted] only to produce the documents eleven days later, after the deadline had passed.

## ARGUMENT

### I. Patrick's Manifest Culpability Will Substantially Prejudice Ed

As explained in the Motion, a joint trial would undoubtedly expose Ed to substantial spillover prejudice from the overwhelming evidence of Patrick's nefarious conduct. *See* Motion at 18–20. The newly disclosed Ruth materials reinforce this fact. As the Indictment demonstrates,

the government's proof is expected to portray Patrick as the principal architect and director of the alleged schemes. The Ruth materials add a distinct and highly probative layer to this narrative: [redacted] do not merely reiterate the allegations contained in the Indictment; [redacted] The resulting disparity in the nature and force of the evidence against Patrick and Ed presents precisely the type of prejudice that warrants separate trials. *See Zafiro v. United States*, 506 U.S. 534, 539 (1993) (identifying markedly disparate culpability among co-defendants as a potential source of prejudice in a joint trial); *United States v. Gray*, 292 F. Supp. 2d 71, 87 (D.D.C. 2003) (observing that severance is appropriate when the proof against one defendant is "far more damaging" than the proof against another) (citing *United States v. Tarantino*, 846 F.2d 1384, 1398 (D.C. Cir. 1988)).

Notably, none of this conduct is attributed to Ed. [redacted] The newly disclosed materials heighten the disparity between the proof against Patrick and Ed: the government intends to present evidence that Patrick [redacted] while alleging no comparable conduct by Ed. *See United States v. DiNome*, 954 F.2d 839, 844-45 (2d Cir. 1992) (vacating fraud convictions because the jury heard a "mass of irrelevant evidence" concerning a RICO enterprise in which certain defendants did not participate); *United States v. Branker*, 395 F.2d 881, 887-88 (2d Cir.

1968) (holding that defendants implicated in only a fraction of the proof were prejudiced by weeks of testimony about unrelated criminal acts).

In a joint trial, however, the practical effect of this distinction would be difficult to contain. [redacted] carries an obvious risk of coloring the jury's assessment of the entire defense and causing jurors to treat Patrick's [redacted] Even with a limiting instruction, the jury would be asked to separate extensive and highly prejudicial evidence [redacted] from its evaluation of the charges brought against Ed. This danger is particularly acute because the government charges Ed and Patrick together in a wide-ranging financial case and is likely to present the Ruth materials as part of a broader narrative concerning the alleged fraud. The volume and gravity of the Ruth materials threaten to overwhelm the individualized determination the jury must make as to Ed and to permit [redacted] to fill evidentiary gaps in the case against him. *See DiNome*, 954 F.2d at 844-45 (recognizing that a mass of evidence irrelevant to particular defendants may prevent the jury from making an individualized assessment of guilt); *Branker*, 395 F.2d at 887-88 (finding spillover prejudice where the jury heard extensive evidence of misconduct unrelated to certain defendants); *United States v. Agnello*, 367 F. Supp. 444, 447 (E.D.N.Y. 1973) (explaining that voluminous and circumstantial proof may create prejudice when the jury cannot sort through the evidence and assess each defendant independently).

## II. Severance Is Warranted To Prevent The Prejudice Of Double Prosecution

The Ruth materials further confirm that a joint trial would expose Ed to a second prosecution by Patrick. *See* Motion at 15-18. In particular, [redacted]

[redacted]

Most significantly, [redacted]

[redacted]

[redacted] thus mirror the defense Patrick has previewed in his severance motion—namely, that Patrick "delegated the responsibility for managing lender relations to Ed," that Ed "betrayed [Patrick's] trust by engineering damaging side deals with First Brands Group's financing counterparties," and that he "hid crucial facts from Patrick, including his own self-dealing." Dkt. No. 108 at 1-2, 4-9; *see also id.* 19 ("Patrick also personally reinjected hundreds of millions of dollars into the business he had worked tirelessly to build.").

This striking alignment is significant considering [redacted] Together, these

circumstances indicate that Patrick's defense will do more than distinguish his conduct from Ed's: it will affirmatively cast Ed as the person who deceived and exploited him.

A joint trial would thus require Ed to defend against both the government's prosecution and Patrick's effort to cast Ed as a wrongdoer. Severance is necessary to prevent Ed from facing a double prosecution in which both the government and Patrick seek to establish his guilt. *See United States v. Shkreli*, 260 F. Supp. 3d 247, 256 (E.D.N.Y. 2017) (ordering separate trials where counsel intended to "act as a second prosecutor" by portraying his client as "just another victim of [his co-defendant's] fraud").

**CONCLUSION**

For the reasons set forth above, and for the reasons set forth in his Motion to Sever (Dkt. No. 111), Edward James respectfully requests that the Court grant his motion and sever his trial from the trial of Patrick James.

Dated: New York, New York
October 19, 2026

Respectfully submitted,

BRACEWELL LLP

By: /s/ Seth D. DuCharme

Seth D. DuCharme
Nicole Boeckmann
David A. Shargel
31 West 52nd Street, 19th Floor
New York, New York 10019
(212) 508-6100
seth.ducharme@bracewell.com
nicole.boeckmann@bracewell.com
david.shargel@bracewell.com