UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

EDWARD JAMES,

Defendant.

26 Cr. 29 (VEC)

**THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT EDWARD JAMES'S MOTION FOR RULE 15 DEPOSITIONS**

JAMES M. MCDONALD
United States Attorney
Southern District of New York

Marguerite B. Colson
Nicholas W. Chiuchiolo
Peter J. Davis
Assistant United States Attorneys
- *Of Counsel* -

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1
APPLICABLE LAW ........ 1
DISCUSSION ........ 3
A. The Defendant Has Not Established Unavailability ........ 3
B. The Testimony of the Witnesses Is Not Material to the Defense ........ 5
C. The Rule 15 Depositions Are Not Necessary to Prevent a Failure of Justice ........ 9
CONCLUSION ........ 12

## TABLE OF AUTHORITIES

Cases Page(s)

*Razak v. Leissner*,
No. 20 MC 387 (JGK), 2021 WL 2581560 (S.D.N.Y. June 22, 2021) .................................... 9

*United States v. Alexandre*,
No. 22 Cr. 326 (JPC), 2022 WL 9843495 (S.D.N.Y. Oct. 17, 2022) ........................................ 3

*United States v. Banki*,
No. 10 Cr. 08 (JFK), 2010 WL 1063453 (S.D.N.Y. Mar. 23, 2010) ....................................... 10

United States v. Buck,
271 F. Supp. 3d 619 (S.D.N.Y. 2017) ....................................................................................... 10

*United States v. Campbell*,
No. 91 Cr. (RJD), 1998 WL 564376 (E.D.N.Y. June 30, 1998) ............................................... 2

*United States v. Chusid*,
No. 00 Cr. 263 (LAK), 2000 WL 1449873 .................................................................... 4, 9, 10

*United States v. Cohen*,
260 F.3d 68 (2d Cir. 2001) .......................................................................................................... 1

*United States v. Drogoul*,
1 F.3d 1546 (11th Cir. 1993) ...................................................................................................... 3

*United States v. Eskamp*,
No. 12 Cr. 120 (RJS), 2013 WL 12175097 (S.D.N.Y. Oct. 3, 2013) ........................................ 5

*United States v. Fargesen*,
No. 21 Cr. 602 (LAP) .......................................................................................................... 6, 11

*United States v. Hernandez–Escarsega*,
886 F.2d 1560 (9th Cir. 1989) ..................................................................................................... 3

*United States v. Isaza-Zapata*,
101 F.3d 1393 (2d Cir. 1996) ................................................................................................. 1, 2

*United States v. Ismaili*,
828 F.2d 153 (3d Cir. 1987) ................................................................................................... 1, 2

*United States v. Johnpoll*,
739 F.2d 702 (2d Cir. 1984) ................................................................................................... 1, 2

*United States v. Johnson*,
No. 21 Cr. 428 (ER), 2023 WL 5632473 (S.D.N.Y. Aug. 31, 2023) ................................. 8, 10

*United States v. Kelley*,
36 F.3d 1118 (D.C. Cir. 1994) ............................................................................................ 2, 5, 6

*United States v. Kostin*,
No. 24 Cr. 91 (GHW), 2025 WL 269059 (S.D.N.Y. Jan. 17, 2025) ........................................ 1

*United States v. Kostin*,
No. 24 Cr. 91 (GHW), 2025 WL 1002254 (S.D.N.Y. Apr. 3, 2025) .................................... 2, 5

*United States v. Mashinsky*,
No. 23 Cr. 347 (JGK), 2024 WL 4728499 (S.D.N.Y. Nov. 8, 2024) ……………………….....5

*United States v. Menendez*,
No. 23 Cr. 490 (SHS), 2024 WL 2214906 (S.D.N.Y. May 16, 2024)………………………...10

*United States v. Merritt*,
No. 90 Cr.  (JSM), 1991 WL 79235 (S.D.N.Y. May 7, 1991) .......... 2, 3, 5
*United States v. Parnas*,
No. 19 Cr. 725 (JPO), 2021 WL 2981567 (S.D.N.Y. July 14, 2021) .......... 3
*United States v. Pham*,
No. 12 Cr. 423 (AJN), 2015 WL 7871348 (S.D.N.Y. Dec. 4, 2015) .......... 2, 8
*United States v. Ramirez*,
No. 20 Cr. 22 (JMF), 2024 WL 4007794 (S.D.N.Y. Aug. 30, 2024) .......... 4, 9, 10
*United States v. Sampson*,
898 F.3d 270 (2d Cir. 2018) .......... 9
*United States v. Scarpa*,
913 F.2d 993 (2d Cir. 1990) .......... 7
*United States v. Sindona*,
636 F.2d 792 (2d Cir. 1980) .......... 4
*United States v. Vilar*,
568 F. Supp. 2d 429 (S.D.N.Y. 2008) .......... 4
*United States v. Whiting*,
308 F.2d 537 (2d Cir. 1962) .......... 4, 5
*United States v. Wilson*,
No. 15-CR-00142-EAW-MJR, 2017 WL 1456984 (W.D.N.Y. Apr. 25, 2017) .......... 7

Rules

Fed. R. Crim. P. 16(b) .......... 9

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to defendant Edward James's motion to take pretrial depositions of seven witnesses, pursuant to Rule 15 of the Federal Rules of Criminal Procedure. (Def. Mot., Dkt. 58). The defendant seeks foreign depositions of two witnesses located in Mexico, [redacted] (the "Mexico Witnesses"), and five witnesses located in Romania, [redacted] (the "Romania Witnesses"). The Court should deny the defendant's motion to take the pretrial deposition of these seven witnesses for four independent reasons: (1) the defendant fails to demonstrate that the witnesses are unavailable; (2) the defendant fails to demonstrate that the witnesses are willing to sit for depositions; (3) the defendant fails to demonstrate that any of the witnesses' testimony is material within the meaning of Rule 15; and (4) there are countervailing factors that make the proposed depositions unjust. Accordingly, defendant's motion should be denied.

**APPLICABLE LAW**

A party seeking a Rule 15 deposition bears the burden of "show[ing] that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice." *United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001); *see also United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984); *United States v. Kostin*, No. 24 Cr. 91 (GHW), 2025 WL 269059, at *5-6 (S.D.N.Y. Jan. 17, 2025).[1]

*First*, as to unavailability, the mere fact that a purported witness resides in a foreign country does not demonstrate the witness's "unavailability" for Rule 15 purposes. *United States v. Isaza-Zapata*, 101 F.3d 1393 (2d Cir. 1996) (citing *United States v. Ismaili*, 828 F.2d 153, 160 (3d Cir.

[1] Unless otherwise noted, all internal citations, quotations marks, and alterations have been omitted from case quotations in this brief.

1987) (holding that unavailability requirement not satisfied by virtue of witnesses residing in Morocco)). The defendant must make some showing that the foreign-based witness is truly unable or unwilling to come to the United States to testify and that the moving party has made a "good-faith effort to produce the person to testify at trial." *Johnpoll*, 739 F.2d at 709; *Isaza-Zapata*, 101 F.3d at 1393; *United States v. Pham*, No. 12 Cr. 423 (AJN), 2015 WL 7871348, at *1-2 (S.D.N.Y. Dec. 4, 2015) (explaining "[c]onclusory statements of unavailability . . . are insufficient").

*Second*, as to materiality, a moving party must demonstrate that the proposed deponent would provide testimony that is "highly relevant to a central issue in th[e] case." *United States v. Kostin*, No. 24 Cr. 91 (GHW), 2025 WL 1002254, at *5 (S.D.N.Y. Apr. 3, 2025). The defendant must generally show, beyond "unsubstantiated speculation," that the testimony sought "exculpates the defendant." *United States v. Kelley*, 36 F.3d 1118, 1125 (D.C. Cir. 1994) (affirming denial of depositions where anticipated testimony, although relevant, was not exculpatory); *see also United States v. Merritt*, No. 90 Cr. 767 (JSM), 1991 WL 79235, at *4 (S.D.N.Y. May 7, 1991) (denying Rule 15 deposition request where "the defendants have made no showing that the deponents' testimony would be exculpatory"); *see also Kostin*, 2025 WL 1002254, at *5 (moving party must demonstrate that the proposed deponent would provide testimony that is "highly relevant to a central issue in th[e] case"). In other words, the testimony sought by the defendant should "challenge central aspects of the government's allegations" or "negate the crux" of the Government's case. *Pham*, 2015 WL 7871348, at *1-2 (citing *Ismaili*, 828 F.2d at 160). Furthermore, "[a] court does not abuse [its] discretion where it denies a Rule 15 motion because 'the evidence [is] in some respects irrelevant and in others cumulative and possibly inadmissible as hearsay.'" *United States v. Campbell*, No. 91 Cr. 1219 (RJD), 1998 WL 564376, at *1 (E.D.N.Y.

June 30, 1998) (quoting *United States v. Hernandez–Escarsega*, 886 F.2d 1560, 1569-70 (9th Cir. 1989)).

*Third*, and finally, a district court must also consider whether significant "countervailing factors" exist that would render the taking of the requested deposition unjust. *See United States v. Drogoul*, 1 F.3d 1546, 1552 (11th Cir. 1993); *United States v. Alexandre*, No. 22 Cr. 326 (JPC), 2022 WL 9843495, at *3 (S.D.N.Y. Oct. 17, 2022) (explaining "[w]hen the first two prongs of the exceptional-circumstances test are met, the third prong, necessity to prevent a failure of justice, is likely satisfied if there are no substantial countervailing factors militating against the taking of the deposition").

## DISCUSSION

For the reasons described below, the defendant has failed to satisfy the requirements of Rule 15 with respect to both the Mexico Witnesses and Romania Witnesses.

### A. The Defendant Has Not Established Unavailability

First, the defendant has not shown that any of the Romania or Mexico Witnesses are unavailable within the meaning of Rule 15. The defendant merely states that the proposed witnesses "indicated" that they do "not want to testify at trial in the United States." (DuCharme Decl. ¶ 4).[2] But "a defendant's mere allegation that that a foreign witness would not attend trial in the United States is an insufficient basis upon which to require the taking of the witness' deposition." *Merritt*, 1991 WL 79235, at *4; *see United States v. Parnas*, No. 19 Cr. 725 (JPO), 2021 WL 2981567, at *7 (S.D.N.Y. July 14, 2021) (denying motion to take Rule 15 deposition of Russian witness where witness's unavailability was based on defense counsel's declaration that it

[2] The DuCharme Declaration states that one witness "indicated that he cannot testify at trial," which stands in contrast to the other six witnesses who indicated only that they "do not want to." In any event, both of these assertions are insufficient to establish a witness's unavailability.

was defense counsel's "understanding" that the witness would "not come to the United States voluntarily to testify"). Rather, to satisfy the unavailability requirement, a moving party must demonstrate its "repeated contact" with its proposed witnesses and that it "promised to pay all expenses of the witnesses' in traveling to the United States." *United States v. Vilar*, 568 F. Supp. 2d 429, 438 (S.D.N.Y. 2008) (quoting *United States v. Sindona*, 636 F.2d 792, 804 (2d Cir. 1980)). Here, the defendant makes no representation that he has had repeated contacts with the Romania and Mexico Witnesses or offered to pay the expenses of their travel. Accordingly, these representations are insufficient.

The defendant has also failed to meet his burden for another reason: Counsel has not represented that these witnesses are willing to sit for a deposition. The Department of Justice's Office of International Affairs ("OIA") has advised the Government that the Mexico Witnesses cannot be compelled to sit for a deposition if they are unwilling to do so voluntarily.[3] Accordingly, granting the defendant's motion may result in nothing other than a waste of resources. To avoid this situation, the Second Circuit requires that before a Rule 15 motion can be granted, the movant must demonstrate "the availability of the proposed witnesses and their willingness to appear." *United States v. Whiting*, 308 F.2d 537, 541 (2d Cir. 1962). Courts in this District have denied Rule 15 motions where movants have failed to make this threshold showing. *See, e.g.*, *United States v. Ramirez*, No. 20 Cr. 22 (JMF), 2024 WL 4007794, at *1 (S.D.N.Y. Aug. 30, 2024) (denying motion where movant failed to establish that witness "would be willing to appear for a deposition" and where witness's willingness to be deposed was further unlikely because "his

[3] OIA has advised the Government that if a legally proper request was issued, the Romanian government could compel the Romania Witnesses to sit for a deposition, but those witnesses would be informed of their right to refuse to provide information that would be self-incriminating.

answers might well incriminate him"); *United States v. Chusid*, No. 00 Cr. 263 (LAK), 2000 WL 1449873, at *3 (denying motion where "there is no reason to suppose that [the witnesses] would voluntarily appear at the United States Embassy in Bulgaria to submit to depositions.").[4] The requirement of establishing that a witness is even willing to sit for deposition is an important threshold consideration, because the interests of justice will not be served by expending the time, effort, and expense of not only the parties and the Court, but also foreign governments and foreign courts, to arrange a deposition for a witness who is not willing (and cannot be compelled) to testify. The defendant's motion should be denied for this reason as well.

**B. The Testimony of the Witnesses Is Not Material to the Defense**

The Court should also deny the defendant's request to depose the witnesses for the independent reason that he has failed to satisfy his burden on materiality—that is, to show that any of the witnesses' testimony is "highly relevant to a central issue in this case," *Kostin*, 2025 WL 1002254, at *5, much less that any of it is "exculpatory," *Merritt*, 1991 WL 79235, at *4-5 (explaining defendants made no showing that expected Rule 15 testimony would be exculpatory); *Kelley*, 36 F.3d at 1124-25 ("[T]here is typically some showing, beyond unsubstantiated speculation, that the evidence exculpates the defendant.").

[4] As Judge Furman recognized in *Ramirez*, "at least one Judge in this District (since elevated to the Court of Appeals) has held that 'whether or not a witness would be willing to testify at the deposition is irrelevant in decided a Rule 15 motion.'" 2024 WL 4007794, at *1 n.1 (citing *United States v. Eskamp*, No. 12 Cr. 120 (RJS), 2013 WL 12175097, at *1 (S.D.N.Y. Oct. 3, 2013)); *see also United States v. Mashinsky*, 23 Cr. 347 (JGK), 2024 WL 4728499, at *5-6 (S.D.N.Y. Nov. 8, 2024). But Judge Furman also correctly noted that Judge Sullivan's decision in *Eskamp* was contrary to the Second Circuit's decision in *Whiting*, which "appears to remain good law for that point and, thus, constitutes 'binding case law.'" *Id.* In addition, the fact that the depositions would entail a massive expenditure of resources to arrange, while the result is possibly a refusal to testify, would be appropriately considered under the "interests of justice" prong.

Instead, defendant suggests that these witnesses will testify "to the mechanics of the financing and accounting processes that are at the heart of the charged conduct." (Def. Mot. at 6-7.) The defendant does not explain how any background testimony about these functions is exculpatory. Nor does he explain how it would not be cumulative of other U.S.-based witnesses' testimony. Indeed, the defendant notes that many of these witnesses reported to Andy Brumbergs or [redacted] both of whom are U.S.-based and expected to testify at trial as Government witnesses. (*Id.* at 7.) Indeed, the correspondence that the defendant attaches to his motion includes U.S. based former employees who will testify as Government witnesses or are available to the defense. (*See* DuCharme Decl. Ex. A (chat including U.S.-based employees [redacted] and Brumbergs); *id.* Ex. B. (chat including U.S.-based employees Brumbergs and [redacted]); *id.* Ex. E (email between [redacted] and Brumbergs); *id.* Ex. G (chat including [redacted]). *See United States v. Fargesen*, No. 21 CR 602 (LAP), 2022 WL 4110303, at *2 (S.D.N.Y. Sept. 8, 2022) ("Nevertheless, a court may "properly deny [a] motion [to depose] if the proposed testimony would be cumulative.").

The defendant relies on the Examiner's Report, a document prepared by the independent bankruptcy examiner, to argue that the Romania and Mexico Witnesses will provide "significan[t]" testimony. (Def. Mot. 7). But the Examiner's Report instead establishes that there are U.S.-based witnesses available to testify on these same mechanical topics, which are not material to the defense in any event. For example, as to [redacted] the Examiner Report mentions his membership in "a Teams group." (Ducharme Dec. Ex. D. at 64.) But this Teams group also included Cleveland-based employees [redacted] and Mr. Brumbergs, each of whom could provide testimony regarding the group. As to [redacted] and [redacted] the defendant points to their membership on a Treasury SharePoint, but there were multiple U.S.-based employees, including

[redacted] also included on that SharePoint. (DuCharme Decl. Ex. D at 63 n. 249.) The Examiner's Report also notes that [redacted] stated that personnel in Europe did not have access to a particular FBG system, but instead that it was Ms. [redacted], a U.S-based employee, who [redacted] reported to. (*Id.* Ex. D. at 62 & n.243.) And, as to [redacted] the Examiner's Report notes that the witness statements "aligns" with the Indictment's allegations because "Mr. Brumbergs directed downstream personnel to record corresponding entries." (*Id.* Ex. D at 96 & nn. 402-403.) Indeed, the correspondence that the defendant cites in support of needing [redacted]'s deposition testimony includes both Brumbergs and [redacted] In short, the defendant has not met his burden to show that this background testimony lies solely with the foreign witnesses, nor does he attempt to explain how this background testimony could be considered exculpatory to challenge the central aspects of the Government's case.[5]

Counsel also speculates that these witnesses "are expected to testify that they did not know Mr. James and did not observe any conduct by Mr. James in furtherance of the alleged schemes." (Def. Mot. at 7-8.) Even assuming that these witnesses will testify that they did not know the defendant or observe him commit any fraudulent conduct,[6] that is not relevant to any central issue in this case, and not exculpatory. Indeed, that these witnesses "did not know Mr. James" undercuts any argument by the defense that they have exculpatory evidence. If these witnesses did not know the defendant and were in a foreign country, then they did not have an opportunity to observe him

[5] Defendant does not cite to the Examiner's Report for his description of anticipated testimony of [redacted] and his unsourced description of Briones's anticipated testimony is essentially that she reported to Esquivel and assisted in certain accounting functions. This general background information does not meet the materiality requirement.

[6] Defendant asserts that [redacted] did have communications with Edward James. As to this witness, the defendant describes her potential testimony as generally involving inventory tracking and off-balance sheet debt, but does not explain how this background testimony is material given that the defendant expects her to testify it "was others who were responsible for approving transactions." (Br. 10.)

committing any crimes. That makes them similarly situated to the nearly 26,000 employees worldwide who worked for First Brands and did not interact directly with the defendant—the founder's brother—and therefore would not be expected to provide affirmatively incriminating testimony. *See, e.g.*, *United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990) ("A defendant may not seek to establish his innocence, however, through proof of the absence of criminal acts on specific occasions."); *United States v. Wilson*, No. 15-CR-00142-EAW-MJR, 2017 WL 1456984, at *4 (W.D.N.Y. Apr. 25, 2017), *aff'd sub nom. United States v. Pirk*, 282 F. Supp. 3d 585 (W.D.N.Y. 2017) ("Importantly, it has also been recognized that information is not exculpatory merely because it is not affirmatively incriminating.").

Further still, that these witnesses may testify that they took instructions from Mr. Brumbergs or [redacted] (both U.S.-based employees) and may not directly inculpate Mr. James is consistent with the Government's charges against the defendant. Indeed, the Indictment alleges that Patrick James took steps to restrict information to "an inner circle of First Brands executives involved in the fraudulent scheme, so that no low-level employee would inadvertently supply accurate information to an inquiring lender." *See, e.g.*, Indictment ¶ 13; DuCharme Decl. Ex. D at 48 ("FBG's highly decentralized organizational structure created an operating environment in which fraudulent Third-Party Factoring activity could be executed without detection by rank-and file employees.").

And much of what is described in the Examiner's Report suggests that these witnesses will be confirmatory of the Indictment's allegations. For example, the Examiner's Report cites an interview of [redacted] for the proposition that "invoice data was prepared and consolidated in Romania, but reviewed, adjusted, and authorized for submission by Cleveland-based personnel, principally Mr. Brumbergs, before being Transmitted to Third-Party Factors." (DuCharme Decl.

Ex. D at 64 & n.256; *see also id.* at 65 & n.259; *id.* at 73 at n.302 ("Investigators found that FBG maintained separate files tracking which invoices had or had not been used for factoring, enabling FBG to (knowingly) recycle invoice numbers and submit previously factored receivables to additional factors.)"). Consistent with the charges, the Examiner's Report explains that these lower-level employees submitted their work to Mr. Brumbergs and other Cleveland-based personnel.

The defendant therefore fails to establish that the witnesses' testimony is either material or necessary to the defense and the Motion should be denied. *United States v. Johnson*, No. 21 Cr. 428 (ER), 2023 WL 5632473, at *15 (S.D.N.Y. Aug. 31, 2023) (rejecting defendants' motion for Rule 15 deposition where defendants "failed to meet their burden regarding the materiality and necessity of the testimony.").

**C. The Rule 15 Depositions Are Not Necessary to Prevent a Failure of Justice**

Finally, the defendant has also not shown that deposing the witnesses is necessary to prevent a failure of justice. The defendant has an obligation to "alert the district court to the substance of the evidence that is at peril of being excluded." *Pham*, 2015 WL 7871348, at *2. As explained above, however, the defendant's proffered reasons for deposing the witnesses involve background information that is available through U.S.-based witnesses, and fail to identify any evidence that would tend to exculpate him. Mere guesswork about the potential probative value of their testimony does not justify the Rule 15 depositions the defendant seeks. As such, the defendant's concerns about a "failure of justice" are misplaced. Even if the defendant were able to show that the witnesses are willing to sit for depositions, or would offer material or exculpatory evidence at trial—which he cannot—his motion should still be denied because granting the motion would not further the interests of justice.

*First*, the defendant is seeking to use the much broader tools of civil discovery to circumvent the limitations of criminal discovery. "[F]ederal criminal discovery is far more limited than federal civil discovery," and "unlike their civil counterparts, criminal proceedings have no extensive discovery procedures requiring both sides to lay their evidentiary cards on the table before trial." *United States v. Sampson*, 898 F.3d 270, 280 (2d Cir. 2018) (citations and alterations omitted). Courts routinely stay parallel civil actions until the completion of the criminal action, in part to avoid "extend[ing] criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b)," *Razak v. Leissner*, No. 20 MC 387 (JGK), 2021 WL 2581560, at *1 (S.D.N.Y. June 22, 2021), and because "the broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence." *Id.* at *2.

*Second*, at this point Rule 15 depositions would almost certainly require a delay of the February 2027 trial date. "Motions to conduct depositions in criminal cases must be made promptly and certainly are denied properly where the depositions sought would delay the trial." *Chusid*, 2000 WL 1449873, at *3. *See also United States v. Ramirez*, No. 20 Cr. 22 (JMF), 2024 WL 4007794, at *1 (S.D.N.Y. Aug. 30, 2024) (denying Rule 15 motion which "at this point would almost certainly delay the trial and, at a minimum, 'would deprive the government' of much of its valuable remaining time for 'trial preparation' as it would need to attend the deposition in the Dominican Republic." (citing *Chusid*, 2000 WL 1449873, at *1)); *United States v. Menendez*, No. 23 Cr. 490 (SHS), 2024 WL 2214906, at *3 (S.D.N.Y. May 16, 2024) ("[T]here is a recognized interest of justice factor present here that militates against granting the motion: potential delay in trying the matter."); *Johnson*, 2023 WL 5632473, at *16 (denying Rule 15 motion in part because of "the significant delays that would be caused by the Defendants' requests").

The defendant was charged in January 2026, and the Examiner's Report was issued in April 2026. By waiting until just months before trial to seek these depositions, the defendant has created a situation where even under the fastest schedule, the depositions almost certainly cannot be taken before the current trial date. Moreover, if somehow the depositions were able to be scheduled prior to the current trial date, it would require the Government to expend its "valuable remaining time for 'trial preparation'" traveling to two countries for multiple depositions. *Ramirez*, 2024 WL 4007794, at *1.

*Third*, the format of the foreign depositions, including the inability of this Court to hold the witnesses in contempt for false testimony or otherwise refusing to comply with trial procedures (such as refusing to answer questions on cross-examination), raises concerns about the reliability of the testimony. While the possibility of foreign perjury consequences might theoretically exist based on a foreign oath, the witnesses would know that, as a practical matter, the foreign authority that has no knowledge of the underlying facts with which to prove the falsity of the testimony is unlikely to bring such charges. *See United States v. Banki*, No. 10 Cr. 08 (JFK), 2010 WL 1063453, at *2 (S.D.N.Y. Mar. 23, 2010) ("Without the teeth of the penalty of perjury, the oath becomes nothing more than an empty recital."); *United States v. Buck*, 271 F. Supp. 3d 619, 624 (S.D.N.Y. 2017) ("[T]hese [Swiss] witnesses' testimony may essentially be free of any penalty of perjury, calling into doubt the reliability of any of the potential testimony.").[7]

---

[7] The risk of perjury in a foreign deposition was demonstrated in *United States v. Fargesen*, No. 21 Cr. 602 (LAP). In that case, Judge Preska granted the defendant's Rule 15 motion and ordered depositions to take place in Dubai. After the deposition, the Government discovered that one of the witnesses had not only perjured himself but also introduced fabricated documents that he created a day before the deposition. To date, the Government is not aware of the witness facing any consequences from the United Arab Emirates authorities. *See* No. 21 Cr. 602 (LAP), Dkt. 167.

For each of these reasons, the interests of justice counsel against granting the defendant's motion for depositions under Rule 15.

**CONCLUSION**

For the foregoing reasons, the Court should deny the defendant's Rule 15 motion.

Dated: New York, New York
November 24, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney

By: /s/
Nicholas W. Chiuchiolo
Marguerite B. Colson
Peter J. Davis
Assistant United States Attorneys
Southern District of New York
(212) 637-1247 | -2587 | -2468